Aron Steuer, J.
The action is for a declaratory judgment. Both sides are in accord that there is no question of fact and both move for summary judgment. Plaintiff is a Connecticut insurance company in the business of life insurance, annuities and accident and health insurance. In 1956, plaintiff was desirous of acquiring the stock of another Connecticut insurance company. The latter engaged in the business of fire insurance. A plan was promulgated and approved by the stockholders of both companies for plaintiff to acquire a substantial majority of the stock of National Fire Insurance Co. in exchange for its own stock. Plaintiff’s plan was to operate this company as a subsidiary. The plan was not put into practice, however, because defendant, the Insurance Commissioner of the State of New York, advised plaintiff that the plan violated the statutes of this State and if put into effect would necessitate his revoking plain *928 tiff’s license to do business here. The purpose of this action is to determine whether the plan in fact contravenes our statutes.
The particular statute involved is subdivision 3 of section 42 of the Insurance Law, which reads: “No foreign insurer shall be licensed to do in this state any kind of insurance business, or combination of kinds of insurance business, which are not permitted to be done by domestic insurers hereafter to be licensed under the provisions of this chapter. No foreign insurer shall be authorized to do business in this state if it does in this state or elsewhere any kind of business, other than an insurance business and such business as is necessarily or properly incidental to the kind or kinds of insurance business which it is licensed to do in this state. ’ ’
There is no doubt and it is not disputed that the business open to foreign insurance companies licensed to write life insurance is limited to life insurance, annuities and accident and health insurance. It is plaintiff’s contention that there is no statutory prohibition against a life insurance company owning the stock of a company which engages in other forms of insurance. In this connection, plaintiff does not contend that in this instance its interest would be in the character of an investment in an outside independent business. Admittedly, plaintiff would control the subsidiary and the latter’s operations would be subject to plaintiff’s directions. It is such operation that plaintiff contends is countenanced.
Plaintiff’s argument is twofold. Its first claim is that this is inherent in the statute. Its second is that any other interpretation would be unconstitutional as depriving plaintiff of the benefit of equal protection of the laws. This second contention is based on the fact that two other Connecticut life insurance companies — Travelers and .¿Etna — have subsidiaries engaged in writing fire insurance, and defendant, well aware of this fact, has renewed their licenses annually for a long period.
It must be admitted that defendant’s position in regard to those companies is not as clear as it might be. He points out that their acquisition of subsidiaries antedated 1940, the year the present enactment went into effect. As he does not deem the section to have retroactive effect, he has continued to issue licenses to these companies. This position is somewhat weakened by his contention that the prior statutes were to the same effect, though not so specific, and hence the permission afforded these companies was due to a misinterpretation by the then holder of the office.
But, however this may be, it furnishes no ammunition to plaintiff. Either defendant is empowered to refuse to license *929 these companies or he is not. Assume first that he is. Because an official does not enforce the law equally does not give rise to a claim of unconstitutionality. It would only be where the statute purported to make the operation by the others legal, and the operation by the plaintiff illegal, that such a contention could be substantiated. But that is not the case. If it be assumed that the operation of those two companies is, though contrary to the present statute, unassailable, the constitutional question presented is one of reasonableness and degree. Where the question of equal protection is raised, the existence of exceptions is the basis of the controversy. And the question is whether the exception is reasonable or arbitrary. A cutoff date is only considered arbitrary where its introduction is either designed to give a monopolistic advantage or would have that effect. A reform is not constitutionally precluded because someone might acquire a temporary advantage. Here, out of 71 companies in the field, plaintiff is situated similarly to 68. It cannot be said that the law works an inequality.
Coming now to the statute itself, the Insurance Law recognizes and provides for subsidiary corporations (§§ 4, 67, subd. 1). And there are many instances where a practice is forbidden to an insurer. The statute states that it is equally forbidden to carry out the practice through a subsidiary (see §§ 78, 85, 91, 111, 114, 119, etc.). As far as the internal evidence of the statute itself is concerned, this is all that supports plaintiff’s claim. It is always easy to deduce what the Legislature intended to permit, by its failure to provide against the specific invasion contemplated. And proportionate to the degree that it is facile is the argument inconclusive.
When it comes to extrinsic evidence of the legislative intent, the problem becomes complex. The particular section is a part of a general revision of the Insurance Law finally enacted in 1939. There is a wealth of discussion on various related subjects, but no direct reference to the specific question of whether subdivision 3 of section 42 intends to prohibit ownership of a subsidiary engaged in writing other kinds of insurance. Two points are clear. The Legislature did intend to forbid the practice, then common, of allowing insurance companies to go into other lands of business, such as banking, either through the medium of subsidiaries or otherwise. (Beport of the Legislative Insurance Investigating Committee, vol. 10, p. 385 et seq.) It is also quite clear that the attention of the Legislature was drawn to the fact that fire insurance companies were acquiring subsidiaries engaged in providing life insurance, but apparently the sole concern of the Legislature in that situation was that the *930 public should not be misled by any similarity of name (Insurance Law Rev., tentative draft, 1937, § 32.1). Section 50 of the present law, which provides for refusal of license to an applicant with a name similar to that of an existing company, is the outgrowth of discussion of that subject, and both before and after the enactment the comment shows that writing of different kinds of insurance through the media of subsidiaries was contemplated.
However, the most persuasive evidence is found in the legislation of 1958. In that year the Legislature liberalized the provisions of section 90, which deals with the type of investment a life insurance company may make. At that time the issue between these parties was crystallized and well known to those interested. The position of the defendant (actually his predecessor in office) was well known. Nevertheless, no change or clarification in section 42 was made. And in fact the Legislature, in enacting the revised section 90, added “ Nothing in this section shall be construed to relieve any foreign or alien insurer from compliance with any other provision of this chapter.” It is therefore believed that the Legislature did not intend to permit a foreign insurer to conduct any other kind of insurance business through a subsidiary.
Motion is denied and cross motion granted.